BALL *et al. v.* TRENHOLM.

*(District Court, D. South Carolina.* April 1, 1891.)

1. ADMIRALTY—JURISDICTION—DEFECTIVE WHARF.
    A claim against a wharf-owner for injury sustained by a vessel in the dock by reason of an alleged defect therein is within the jurisdiction of admiralty, and a libel *in personam* will lie.

2. RES ADJUDICATA.
    But where such an action has been brought in the state court, and a verdict rendered for defendant, and plaintiff's motion for new trial overruled, and a notice of appeal given, the action of the court is *res adjudicata,* although the formal judgment has not been entered, and the jurisdiction of the court is exhausted. An order entered in the circuit court after appeal to the supreme court, giving plaintiffs leave to discontinue their cause on payment of costs, is *coram non judice,* and will not enable them to maintain a libel in a court of admiralty on the same cause of action.

3. DISMISSAL OF SUIT.
    An order to discontinue a cause cannot be entered after judgment.

In Admiralty.

*Charles Prioleau* and *Northrop & Memminger,* for libelants.

*J. Ancrum Simons,* for respondent.

SIMONTON, J. Libel *in personam* against a wharf-owner for injury sustained by a vessel in the dock, by reason of an alleged defect therein. Exceptions are filed to the jurisdiction of the court, on the ground that the subject-matter of the suit is not within the cognizance of admiralty; and, next, that this controversy has already been determined in the state court. There is no doubt on my mind that the case is within the jurisdiction of the admiralty. *The John E. Berkman,* 6 Fed. Rep. 535; *Sawyer v. Oakman,* 7 Blatchf. 290. The other exception requires more discussion. An action was brought in the court of common pleas for Charleston county by these libelants against this respondent. The complaint set forth the same facts as are alleged in this libel; the defense made in the answer is the same made on the merits in the pleading before this court. The cause, being at issue, was tried before his honor, Judge IZLAR, and a jury. The verdict was for the defendant. The plaintiffs moved for a new trial on the minutes, and on an affidavit of the absence of a material witness. The judge in a written decree refused the new trial, expressing his satisfaction with the verdict. Plaintiffs gave notice in writing of their intention to appeal to the supreme court. Before any other steps were taken an order of Judge IZLAR was entered in the court below, giving leave to plaintiffs to discontinue their cause on payment of costs. This order was on the written consent of the attorney for defendant. Under these circumstances, is the controversy between these parties ended, so that this action will not lie?

It becomes important to ascertain if there ever was a judgment in this case. There is no paper on file resembling the *postea* of the old practice, or the summary of verdict and costs of the new procedure, signed by the clerk and the attorney. No formal judgment could have been entered until the motion for a new trial was disposed of. *Tribble v. Poore,* 28

S. C. 565, 6 S. E. Rep. 577. When the judge heard this motion and dismissed it, this was the final determination of the rights of the parties to the action so far as the court of common pleas was concerned. Under the language of the Code of South Carolina, § 266, this is the definition of a "judgment." The failure on the part of the defendant's attorney and of the clerk to prepare a formula or to enter one in the clerk's office do not repair or affect the judgment of the court or take away its character as a judgment. In *Clark* v. *Melton*, 19 S. C. 507, SIMPSON, C. J., puts this so clearly that his words are quoted: "A judgment is the application of the law to the facts found in the case, and is the legal determination of the rights of the parties before the court. * * * To give force and effect to this judgment, however, it is true a formula [under the old practice] was required to be prepared and filed in the clerk's office, and to be entered in the book of abstracts of judgment. * * * It will be observed, however, that the formula did not constitute the judgment of the court, nor did the dating or signing by the clerk with his official signature add anything to its official character. The judgment issues from the court, not from the attorney or the clerk. It precedes the formula, and is the authority on which the formula is prepared, but the formula constitutes no part of the judgment." He goes on, and, in effect, says, the formula is but a step in the proceeding, a part of the machinery adopted to secure to the successful party the fruits of his victory, leading up to the execution. When the decree of Judge IZLAR was filed confirming the verdict, the rights of the parties were determined so far as the court of common pleas could determine them. Nothing more was needed. If the defendant wished to secure fruits of his victory, he or the clerk could enter the formula and issue execution. This was work purely ministerial. The judicial function was ended. The notice given by the plaintiffs of their intention to appeal, the essential initial step towards the supreme court, showed that the plaintiffs sought their remedy elsewhere than in the court below. In fact this notice led the case out of the jurisdiction of the court of common pleas. Thenceforward it came within the jurisdiction of the supreme court. *Whaley* v. *Charleston*, 8 S. C 346; *Bank* v. *Stelling*, 32 S. C. 102, 10 S. E. Rep. 768. The order of Judge IZLAR discontinuing the case was either *coram non judice*, or, if it availed at all, discontinued such proceedings as were pending, to-wit, the intention and notice of appeal. There can be no doubt that a plaintiff, by consent of his adversary, perhaps on his own motion, may discontinue his proceedings before verdict, and upon such discontinuance, and on payment of costs, (rule 61, Cir. Ct. S. C.,) he could begin again, either in the same court or any other court having jurisdiction. In the new suit the prior proceedings could not be set up against him, because there was no adjudication, and no estoppel by judgment. To this extent, and no further, go the cases quoted with much learning and research by the proctor for libelants. But after judgment there can be no right again to litigate the same subject-matter with the same party. Properly speaking, there can be no discontinuance. The rights of the parties in the action having been determined; there is

no continuing action, and nothing to discontinue. The controversy has been adjudicated. The doctrine of *res adjudicata* is sometimes spoken of as "estoppel by judgment." This is an unfortunate use of a term. Wells, Res Adj. § 1. It is not founded on the narrow doctrine of estoppel. When a party has once had the opportunity of litigating his rights in a competent tribunal, and has had an adjudication thereon, they cannot be again drawn into question with the same parties. He has had his day in court. With the result he must content himself. The public interests demand that there be an end of litigation. The libel must be dismissed. But as the defendant assented to the offer for discontinuance, without which it would not have been granted, or this action brought, the costs of the clerk and marshal only will fall on libelant.